Mr. Frank Kruppenbacher Apopka City Attorney Post Office Box 3471 Orlando, Florida 32802-3471
Dear Mr. Kruppenbacher:
On behalf of the Apopka City Commission, you ask the following question:
May the City Commission for the City of Apopka approve a private gated driveway that would run between two public streets where only a limited number of residences would have access to the gate and the two public streets would continue to have public access from other points?
You have advised this office that the use of the term "approve" in the above inquiry refers to the city giving the necessary land development code, building department certificates, and traffic engineering approvals necessary to install the gates and road cuts from the private residences' driveways to the city's right-of-way. This office has no information as to whether the proposed project meets such codes; however, it is presumed for the purpose of this inquiry that the project would meet all such requirements.
This office has previously considered the authority to install gates on public roadways. In Attorney General Opinion 90-51, this office concluded that a municipality was not authorized to install a security gate on a public road limiting access to the road to residents and those nonresidents who purchased a remote control unit. This office stated that such construction would appear to obstruct the free, convenient, and normal use of the public road by impeding or restraining traffic on such road in a manner not authorized by Chapter 316, Florida Statutes.[1]
In the instant inquiry, however, the gated driveway connecting the two public streets appears to be located on private property where the public does not have the right to travel.[2] According to your letter, no gate would be placed on any public road.[3] Thus, the concerns and prohibitions addressed in Attorney General Opinion 90-51 would not appear to be applicable.
Moreover, you have informed this office that all work and ongoing maintenance of this gated driveway would be privately funded; no city equipment or personnel would be used on this private project. This office has generally recognized that a governmental entity may use public funds for the construction, maintenance, or repair of a road only when the road is a "public" road, i.e., one open to and set apart for the public, as contrasted to a private road that by its nature is not open to the public and upon which the public has no right to travel.[4] In the instant inquiry, however, no such public funds are being used.
In light of the above and subject to the conditions specified herein, I am not aware of any provision that would prohibit the city from approving, through the issuance of the appropriate permits, the construction of a private gated driveway that would run between two public streets where only a limited number of residences would have access to the gate and the two public streets would continue to allow public access from other points.[5]
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] See s. 316.2045(1), Fla. Stat., providing that it is unlawful for any person or persons willfully to obstruct the free, convenient, and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon. And see, s. 861.01, Fla. Stat., which provides that whoever obstructs any public road by fencing across or into the same or willfully causes any other obstruction in or to such road or part thereof is guilty of a misdemeanor of the first degree.
[2] The determination as to whether the public has a right to travel on a private road involves mixed questions of law and fact that this office cannot resolve. You have not, however, provided this office with any evidence that the public has acquired prescriptive rights to use the roadway. See, e.g., Grove v. Reeder, 53 So.2d 530 (Fla. 1951), and OrangeBlossom Hills, Inc. v. Kearsley, 299 So.2d 75 (Fla. 1st DCA 1974), in which a private plaintiff established a public prescriptive easement, andCook v. Proctor Gamble Cellulose Company, 648 So.2d 180 (Fla. 1st DCA 1994), denying the establishment of a public prescriptive easement across appellant land owners' property because appellee corporation failed to show substantial use by the public in a manner adverse to appellant's rights. Nor has this office been provided with any information regarding the existence of any easement rights and whether the placement of a gate across the easement amounts to a substantial interference of the dominant easement holders' rights to use the easement. See BHB Development, Inc.v. Bonefish Yacht Club Homeowners Association, Inc., 691 So.2d 1174
(Fla. 3rd DCA 1997); cf. Monell v. Golfview Road Association, 359 So.2d 2
(Fla. 4th DCA 1978) (placement of speed bumps across road is a substantial violation of an easement holder's meaningful right to use road); Normandy B. Condominium Association, Inc. v. Normandy C.Association, Inc., 541 So.2d 1263 (Fla. 4th DCA 1989). It is therefore assumed for purposes of this inquiry that no such rights exist.
[3] Cf. Op. Att'y Gen. Fla. 04-47 (2004) stating that municipalities are precluded by the terms of ss. 166.021(3)(c) and 316.007, Fla. Stat., from abandoning roads and rights-of-way dedicated in a recorded residential subdivision plat and simultaneously conveying their interest in such roads, rights-of-way, and appurtenant drainage facilities to a homeowners' association for the subdivision in the manner provided by section 316.00825, Fla. Stat. Your inquiry, however, does not indicate that the city is abandoning the road or any dedicated right-of-way; rather, the construction of the gated driveway would be on property that is privately owned where the public does not have a right to travel.
[4] See, e.g., Ops. Att'y Gen. Fla. 79-14 (1979), 92-42 (1992), and 99-15 (1999).
[5] I would note, however, that section 316.640(3)(a), Florida Statutes, sets forth the authority of a municipality to enforce the traffic laws of this state by providing in pertinent part:
 "The police department of each chartered municipality shall enforce the traffic laws of this state on all the streets and highways thereof and elsewhere throughout the municipality wherever the public has the right to travel by motor vehicle." (e.s.)
In providing for the enforcement of the Uniform Traffic Control Law, Chapter 316, Florida Statutes, the Legislature did not distinguish between public roads and private property where the public has a right to travel by motor vehicle, nor does there appear to be any reasonable basis for such a distinction. Municipalities, however, do not have enforcement authority with respect to traffic violations and accidents occurring on "private property" where the public does not have the right to travel by motor vehicle unless such roads are within the municipal boundaries and a written agreement pursuant to section 316.006(2)(b), Florida Statutes, has been entered into by the parties. Such an agreement must provide, among other things, for the reimbursement of the actual costs of traffic control and enforcement and for liability insurance and indemnification by the party or parties that own or control such road or roads.